IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JEWELL BILBREY, CRAIG CAPPS, ) | |
| DANIEL HAGGARD, CHRIS ISOM ) | |
| GREG MATTHEWS ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| WHITE COUNTY SHERIFFS DEPARTMENT,) | JURY DEMANDED |
| and ) | |
| STEVE PAGE, SHERIFF ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW, the Plaintiffs, by and through undersigned counsel, and in support of his Complaint, states as follows:

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this cause of action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq*. Venue of this action is proper pursuant to 28 U.S.C. § 1391. Supplemental jurisdiction for the state related claims is conferred upon this Court by 29 U.S.C. § 2617(a).

### II. PARTIES

1. Plaintiff, Jewell Bilbrey (referred herein as "Bilbrey"), is an adult resident of White County, Tennessee, more particularly residing at 121 W. Bronson Street, Sparta, Tennessee 38583, and is formerly employed by Defendant White County Sheriffs Department of White County, Tennessee (sometimes referred to as "the Department" or "Defendant").

2. Plaintiff, Craig Capps (referred herein as "Capps"), is an adult resident of White

1

County, Tennessee, more particularly residing at 1653 Lester Flatt Road, Sparta, Tennessee 38583, and is formerly employed by Defendant White County Sheriffs Department of White County, Tennessee.

3. Plaintiff, Daniel Haggard (referred herein as "Haggard"), is an adult resident of White County, Tennessee, more particularly residing at 460 Cedar Creek Road, Sparta, Tennessee 38583, and is formerly employed by Defendant White County Sheriffs Department of White County, Tennessee.

4. Plaintiff, Chris Isom (referred herein as "Isom"), is an adult resident of White County, Tennessee, more particularly residing at 321 Leon Drive, Sparta, Tennessee 38563, and is formerly employed by Defendant White County Sheriffs Department of White County, Tennessee.

5. Plaintiff, Greg Matthews (referred herein as "Matthews"), is an adult resident of Dekalb County, Tennessee, more particularly residing at 270 Shady Drive, Smithville, Tennessee 37166, and is formerly employed by Defendant White County Sheriffs Department of White County, Tennessee.

6. Collectively, "the Plaintiffs" are all former employees of the Defendant White County Sheriff's Office and Sheriff Steve Page and/or former Sheriff Oddie Shoupe, and have been covered employees under the FLSA.

7. The Court has personal jurisdiction over Defendant White County Sheriff's Office, who is a governmental entity in the State of Tennessee.

8. The Court has personal jurisdiction over Defendant Steve Page ("sometimes referred to as "the Sheriff"), who is a citizen and resident of White County.

9. Defendants are covered employers under the FLSA. Upon information and belief,

Defendant Steve Page ("Page") and former Sheriff Oddie Shoupe ("Shoupe"), as the duly elected Sheriff of White County, Tennessee has been solely or substantially responsible for misclassifying Plaintiffs and other similarly situated employees under the FLSA. During the statutory period, Defendants have been the person or persons acting directly or indirectly in the interest of all Defendants in relations to the Plaintiffs and is an "employer" within the meaning of the FLSA, 20 U.S.C. §203(d) as Page is the Sheriff of White County, Tennessee and all Plaintiffs were employed at the White County Sheriff's Office.

10. In addition to the named Plaintiffs, Defendants employ and have employed additional similarly situated employees.

11. Defendants may be served with process by delivering a copy of this Complaint and Summons to the county attorney, John M. Meadows, located at 211 N Church St, Livingston, TN 38570 or by personal service upon Sheriff Steve Page.

### III. INTRODUCTION.

12. Plaintiffs bring this claim individually and as part of a collective action, under the FLSA, 29 U.S.C. §216(b), on behalf of other employees of Defendants who were denied overtime compensation, straight time compensation, and were worked "off the clock." The collective action claims are for overtime compensation, non-overtime compensation, liquidated damages, interest, and attorneys' fees and cost pursuant to the FLSA, 29 U.S.C. §§207, 216 (b).

### IV. FACTS

13. At all times relevant herein Defendants were the employer and Plaintiffs were employees of Defendant as defined by 29 U.S.C. §203, *et seq*. All work performed by Plaintiffs for Defendants were within the territory of the United States.

14. Plaintiff were paid by Defendants on an hourly basis for work performed.

15. Upon information and belief, and for all relevant time periods, Defendants had an established seven (7) consecutive day work period beginning on Sunday at 12:00 a.m. of each week and ending the following Saturday at 11:59 p.m.

16. Jewell Bilbrey's employment dates with the White County Sheriff's Department, a political subdivision of Defendant and the State of Tennessee were January 30, 2009 through April 12, 2018.

17. Craig Capps' employment dates with the White County Sheriff's Department, a political subdivision of Defendant and the State of Tennessee were February 4, 2008 through February 18, 2019. Capps was employed as a K-9 officer, whose service required additional training, being placed on notice to be ready to report on a weekly or near weekly basis, and going on calls that were separate and apart from his regularly scheduled work hours. Capps received no additional compensation for his services as K-9 officer.

18. Daniel Haggard's employment dates with the White County Sheriff's Department, a political subdivision of Defendant and the State of Tennessee were January 20, 2015 through February 28, 2019.

19. Chris Isom's employment dates with the White County Sheriff's Department, a political subdivision of Defendant and the State of Tennessee were August 1, 1995 through September 29, 2017.

20. Greg Matthews' employment dates with the White County Sheriff's Department, a political subdivision of Defendant and the State of Tennessee were August 12, 2012 to March 26, 2019.

21. At all times material to this action, Defendants were an enterprise engaged in the commerce or in the production of goods for commerce as defined by Section 203(s)(1) of the

FLSA and had annual gross volume of sales which exceeded $500,000.00.

22. The services Plaintiffs rendered to and/or on behalf of Defendants were a necessary and integral part of and essential to the operations of Defendants.

23. Plaintiffs were not employed by Defendants in executive or administrative positions, nor were Plaintiffs subject to any collective bargaining agreement.

24. Plaintiffs were not salaried employees, nor did Plaintiffs receive a weekly base wage from Defendant.

25. Plaintiffs were paid by Defendants on an hourly basis for work performed.

26. Upon information and belief, throughout all the Plaintiffs tenure with the Department, the Defendants had an established seven (7) consecutive day work period beginning on Sunday of each week and ending the following Saturday.

27. Upon information and belief, Defendants' only policy provision for overtime was to say overtime will not be granted for activities 15 minutes or less when operating a Personal Agency Vehicle (PAV) off duty.

28. The overtime wage provisions of the FLSA set forth in 28 U.S.C. § 206 and 207 apply to the Defendants. Accordingly, Defendants are required to pay Plaintiffs' overtime wages at a rate of one and one-half times his hourly rate of pay applicable for the time and shift hours work in excess of 43 hours per week.

29. Defendants, however, failed and refused to pay Plaintiffs overtime wages for all hours Plaintiffs worked for Defendants in excess of 43 hours per week.

30. Rather than receiving overtime wages, Plaintiffs were required to convert overtime hours worked to personal time off; however, Plaintiffs were only able to convert overtime hours to personal time off at a rate of one (1) hour of overtime to one (1) hour of personal time off rather

than at a rate of one (1) hour of overtime to one and one-half (1.5) hours of personal time off as required by the FLSA.

31. Plaintiffs were not granted overtime or any compensation for activities 15 minutes or less when operating a Personal Agency Vehicle (PAV) off duty in violation of the FLSA.

32. Plaintiffs Matthews, Capps, and Bilbrey were required to answer a required to answer a county paid cell phone 24 hours a day and seven days a week without compensation and both were required to come in, if necessary, without compensation. Specifically, Plaintiffs Matthews and Capps was told they could not "nickel and dime" the Defendants every time they got called in.

33. Plaintiff Capps had a county issued phone from 2009 that he was required to keep on his person at all times. As a detective, he was called into work drug investigations frequently, without proper compensation. Once promoted to Lieutenant, Plaintiff Capps was required to be on call for a week at a time during nighttime hours, so the other staff command was not called or awoken during the night. As SWAT Commander, he was on call twenty-four (24) hours per day, seven (7) days per week without compensation.

34. Plaintiffs were required to travel to and from work on days off if assistance was needed without compensation. For example, Plaintiff Capps attended fifty (50) hour trainings and was only compensated for forty (40) hours. In addition, Plaintiffs were not paid any travel time when work required travel to other states or locations for training purposes.

35. Plaintiff were required to attend training without compensation.

36. The actions of Defendants are intentional and knowing violations of the law, as prior litigation over FLSA issues have been litigated by other officers against these same Defendants.

37. Defendants have an overtime policy in place, but it is not followed by the Defendants and is not in compliance with the FLSA.

38. Plaintiffs were told they were not entitled to overtime pay, even though it was never disputed that they were working hours which entitled them to overtime pay under the law and Plaintiffs performed work in excess of forty-three (43) hours per week on a regular and repeated basis.

39. In addition to Plaintiffs, there are other similarly situated hourly employees of the Defendants, including but not limited to other officers, detectives, investigators, and dispatchers, all of whom have performed work in excess of forty-three (43) hours on a regular and repeated basis without the benefit of receiving overtime pay and non-overtime compensation in violation of the law.

40. Pursuant to 28 U.S.C. §216(b) Plaintiffs are entitled to a judgment for the uncompensated overtime wages and non-overtime compensation, an amount to be calculated plus an additional equal amount as liquidated damages, prejudgment interest, attorney fees, and litigation expenses and costs.

41. Plaintiffs are aware of other similarly situated employees and/or former employees of Defendants who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of court-supervised notice of the present lawsuit and the opportunity to join the lawsuit by filing a consent pursuant to Section 216(b) of the FLSA. Specifically, Plaintiff is aware of other employees of Defendants who worked as police officers who were not paid overtime wages at a rate of one and one-half times their regular rate of pay or the pay they should have been paid pursuant to Tenn. Code Ann. §12-4-401 et. seq., for all hours worked over 43 (forty-three) during each work week and non-overtime compensation. All other employees that

have worked for Defendants within the last three years and have not been paid overtime wages for all hours worked over 43 (forty-three) and non-overtime compensation during each work week are similarly situated to Plaintiffs and should be given notice of this lawsuit and the opportunity to join.

42. All other similarly situated employees are also entitled to damages in the form of uncompensated overtime wages, non-overtime compensation, liquidated damages, attorney's fees and other damages so as to preclude Defendants' unjust enrichment.

43. Pursuant to Section 216(b), attached hereto and filed with this Complaint as "collective Exhibit A" is the Consent to Become Party Plaintiff executed by Plaintiffs.

44. This action is maintainable as an "opt in" collective action pursuant to 29 U.S.C § 216(b) as to claims for overtime compensation, straight time compensation, liquidated damages, interest, attorneys' fees, and cost under the FLSA. In addition to Plaintiffs, numerous current and former employees of Defendants are similarly situated to Plaintiffs with regard to their wages and damages, in that they have been denied proper compensation for a number of years prior o the filing of this Complaint. Plaintiffs are representatives of those other and current and former employees and are acting on behalf of their interests as well as Plaintiffs' own interests in bringing this action. Those similarly situated employees are known to Defendants and are readily identifiable, and may be located through Defendants' records. These similarly situated employees may be readily notified of this action and allowed to "opt in" pursuant to 29 U.S.C. §216(b), for purposes of collectively adjudicating their claims for unpaid overtime compensation, non-overtime compensation, liquidated damages, interest, attorneys' fees, and costs under the FLSA.

45. The actions of Defendants, as complained of herein are intentional, willful, oppressive, reckless, and calculated to cause Plaintiff to suffer injuries or accomplished with a

deliberate indifference to the injuries that Plaintiff would and did suffer, and accordingly, Plaintiff is entitled to an award of punitive damages in order to deter Defendants from repeating said conduct.

## V. CAUSES OF ACTION

### COUNT ONE: VIOLATION OF THE FLSA

46. The foregoing facts are incorporated by reference as if fully stated herein.

47. Plaintiffs, on behalf of themselves and others similarly situated, bring a cause of action against Defendants for willful failure to pay overtime wages in violations of the Fair Labor Standards Act of 1938 and for failure to pay non-overtime compensation.

### COUNT TWO: WHISTLEBLOWER RETALIATION AS TO PLAINTIFF GREG MATTHEWS

48. The forgoing facts are incorporated by reference as if fully stated herein.

49. Toward the end of this tenure with the White County Sheriff's Office, Plaintiff Greg Matthews was ranked as Major and was Jail Administrator of the White County Jail.

50. Plaintiff was in charge of day to day operations of the jail and was responsible for inmate safety, security, and the oversight of correctional employees training.

51. On September 10, 2018 Sheriff Page called a meeting with all staff to introduce Cami Howard as the new Director of Administration and he stated that she would be the "head of the correctional facility," which placed her in a supervisory position over Plaintiff Matthews.

52. Howard's title is "Director of Administration" however, her job duties are that equivalent to "Chief" in other departments across the State, as it was made clear to all employees that she is second in command.

53. The "Director of Administration" is a sham title and merely a way for the Defendants to shirk the need for proper law enforcement training at the Tennessee Law

Case 2:19-cv-00058   Document 1   Filed 07/22/19   Page 9 of 15 PageID #: 9
9

Enforcement Training Academy (P.O.S.T. certification) and by the Tennessee Corrections Institute.

54. Cami Howard demoted Plaintiff Matthews to Captain; however, even though he was now the same rank, the other Captains within the Department continued to answer to Plaintiff Matthews as they always had, despite the demotion.

55. Plaintiff Matthews maintains he was demoted by Howard for no other reason than retaliation and to humiliate the Plaintiff in front of his other co-workers.

56. Cami Howard, before taking a position at the White County Sheriff's Office was employed at a pawn shop and had no prior law enforcement training.

57. Cami Howard is not P.O.S.T. certified and, over Plaintiff Matthews many objections, never underwent any training before performing correctional functions within the White County Jail.

58. Plaintiff Matthews and/or his staff maintained all training records of all employees and; therefore, Plaintiff has direct knowledge that Cami Howard never received proper training.

59. Cami Howard repeatedly stated she would never have to be P.O.S.T. certified and she was going to attend the Tennessee Law Enforcement Training Academy, despite being in a position that often requires knowledge only obtain through P.O.S.T. and T.C.I certifications.

60. Cami Howard changed correctional policies previously adopted by the White County Sheriff's Office and endorsed under Tennessee Correctional Institute standards, which resulted in a failure to comply with T.C.I standards.

61. Because Plaintiff Matthews was acutely aware of the Tennessee Correctional Institute standards, Plaintiff Matthews was worried about the liability of the Defendants, because Howard was operating in a capacity that she was not trained for and did so daily in violation of

state law.

62. Plaintiff Matthews asked Sheriff Steve Page for Cami Howard receive proper training so the Department would not be subject to liability and in order to remain in compliance with the law of the State of Tennessee and the Tennessee Correctional Institute standards.

63. Plaintiff Matthews, while speaking with the jail inspector, Joe Ferguson, mentioned again his concerns of a civilian running the jail.

64. On a number of occasions Plaintiff Matthews or his employees would have to retrieve Howard from various pods because she would taunt inmates and make inappropriate comments or gestures, placing herself, the inmates, and her fellow co-workers at risk.

65. On or about March 18, 2019, Cami Howard told inmates they would begin "policing their own" and gave a winking gesture toward inmates.

66. Cami Howard changed departmental policies from the allowable two (2) hour limit of restraining unruly inmates to "officers' discretion," in violation of T.C.I. standards and Tenn. Code Ann. §41-4-140.

67. Cami Howard allowed male inmates in the kitchen even though this is a known cause for concern to access to weapons, in violation of T.C.I. standards and Tenn. Code Ann. §41-4-140.

68. Cami Howard discovered the Plaintiff's requests to the Sheriff to send Howard to formal required training.

69. Cami Howard created a "snitch list" employing staff to find a reason to fire Plaintiff Matthews.

70. On March 25, 2019, Plaintiff Matthews typed a memorandum to Sheriff Page, on a Department computer, once again informing the Sheriff of all his concerns within the

department.

71. Because of his whistleblowing activity, on March 26, 2019 Plaintiff Matthews was terminated from the Department and told to leave the property or be arrested.

72. On March 27, 2019 Plaintiff Matthews was told, by the same officer who ordered him to leave the property, that if he had in fact arrested him it would have only been at the Sheriff's request and without probable cause.

73. Defendants knew or should have known that Tenn. Code Ann.§ 41-4-140 (a)(1) gives the Tennessee Correction Institute the power and duty to "[e]stablish minimum standards for local jails, lock-ups, and workhouses, including but not limited to, standards for physical facilities and standards for correctional programs of treatment, education and rehabilitation of inmates and standards for the safekeeping, health, and welfare of inmates."

74. Tennessee Correction Institute Policy 1400-01-06 (4) establishes that "[p]rior to assuming duties, all detention facility employees, support employees and non-facility support staff shall receive orientation training regarding the functions and mission of the facility under the supervision if a qualified detention officer."

75. Tennessee Correction Institute Policy 1400-01-06 (13) establishes that,

"Tennessee P.O.S.T. certified officers may perform the basic functions outlined within the standards, if the correctional facility has been approved as a Type IV facilty by the Tennessee Corrections Board of Control. Any employee who does not maintain a P.O.S.T. Certification as specified in this rule, shall be required to comply with all training and reporting standards outlined within the minimum jail standards and policy contained in Tenn Comp. R. Regs. 1400-06. Under no circumstances shall any employee of a correctional facility be allowed to perform correctional functions without possessing a valid P.O.S.T. Certification (for Type IV Facility) or certification from the Tennessee Corrections Institutes (All Facilities) as it related to the duties of a correctional employee."

76. Defendants knew or should have known that asking Matthews to remain silent about such activities was illegal and in violation of the aforementioned statutes and regulations.

77. Plaintiff Matthews refused to remain silent about illegal activity and as a result was discharged by the Defendants.

### COUNT THREE: VIOLATIONS OF THE PUBLIC EMPLOYEE POLITICAL FREEDOM ACT OF 1980 AS TO PLAINTIFF MATTHEWS

78. The foregoing facts are incorporated by reference as if fully stated herein.

79. The Public Employee Political Freedom Act of 1980 ("PEPFA") is codified in Tenn. Code Ann. § 8-50-601 *et seq.*

80. The PEPFA states that "no public employee shall be prohibited from communicating with an elected public official for any job-related purpose whatsoever." At all relevant times, Plaintiff Matthews was a public employee as defined in Tenn. Code Ann. § 8-50-602(b). At all relevant times, the Sheriff was an elected public official.

81. The PEPFA provides that a public employer shall not discipline, threaten to discipline or otherwise discriminate against an employee because such employee exercised that employee's right to communicate with an elected public official.

82. Each and every time Plaintiff Matthews voiced his concerns regarding Cami Howard to the Sherriff, Plaintiff Matthews was exercising his rights which are protected by PEPFA.

83. Each and every time Plaintiff Matthews was disciplined, threatened to be disciplined or otherwise discriminated against as result of his communications with the Sherriff is a violation of the PEPFA.

84. Plaintiff Matthews' termination of employment as result of his communications with the Sherriff is a violation of the PEPFA.

85. Pursuant to Tenn. Code Ann. § 8-50-603(b), if the court determines that a public employer has disciplined, threatened to discipline or otherwise discriminated against an employee

Case 2:19-cv-00058   Document 1   Filed 07/22/19   Page 13 of 15 PageID #: 13

13

because such employee exercised the rights provided by the PEPFA, such employee shall be entitled to treble damages plus reasonable attorney fees.

86. The actions of Defendants, as complained of herein are intentional, willful, oppressive, reckless, and calculated to cause Plaintiff to suffer injuries or accomplished with a deliberate indifference to the injuries that Plaintiff would and did suffer, and accordingly, Plaintiff is entitled to an award of punitive damages in order to deter Defendants from repeating said conduct.

**WHEREFORE**, Plaintiffs, individually, and on behalf of other similarly situated persons, pursuant to 29 U.S.C. § 216(b) of the FLSA and for other stated related causes of action, prays for the following relief:

- **(a)** They are allowed to give notice to all other potential Plaintiffs who may be similarly situated, or that the court issue such notice;
- **(b)** Other similarly situated former and present employees be given the opportunity to join this lawsuit as party Plaintiffs by filing written consents pursuant to 29 U.S.C. §216(b);
- **(c)** Plaintiffs are awarded damages in the amount of their respective uncompensated overtime wages, back pay, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b);
- **(d)** Plaintiffs are awarded reasonable attorney's fees;
- **(e)** Plaintiff Matthews is awarded treble damages and his attorney fees pursuant to Tenn. Code Ann. § 8-50-603(b);
- **(f)** Plaintiffs are awarded costs and expenses of this action;
- **(g)** Plaintiffs are awarded prejudgment interest;

**(h)** Plaintiffs are awarded punitive damages in amount to be determined by a jury; and

**(i)** Plaintiffs are granted such other further general and/or special, legal and/or equitable relief to which they may be entitled, or the Court deems proper.

                    Respectfully submitted,

/s/ Robin C. Moore
Robin C. Moore, Esq. (#032995)
220 Main Street St.
PO Box 182
Carthage, TN 37030
P: (615) 735-1100
F: (615) 735-2598
Email: robin@robinmoorelaw.com


/s/ Dana R. Looper
Dana R. Looper, Esq. (#036859)
165 E. Spring Street
Cookeville, TN 38501
P: (931) 526-5594
F: (931) 526-5441
Email: danalooper@danalooperlaw.com

*Counsel for the Plaintiffs*